UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MADALYN M. SOULLIERE, | Civil Action No. 23-10596 |
| Plaintiff, | Matthew F. Leitman |
| v. | United States District Judge |
| NORMA HERR WOMEN'S CENTER, | David R. Grand |
| Defendant. | United States Magistrate Judge |
| _____/ | |

### REPORT AND RECOMMENDATION TO DISMISS PLAINTIFF'S COMPLAINT WITH LEAVE TO AMEND, AND TO DENY WITHOUT PREJUDICE DFENDANT'S MOTION (ECF No. 18)

**Background**

*Pro se* plaintiff Madalyn M. Soulliere ("Soulliere") commenced this action against the Norma Herr Women's Center (the "Center"). Soulliere's complaint is difficult to follow, but it appears to stem from certain events and interactions she had during her stay at the Center in May 2022, including alleged theft and damage of her belongings, as well as some form of alleged sexual harassment that led to her being thrown out of the Center. (ECF No. 1). The case has been referred to the undersigned for all pretrial proceedings pursuant to 28 U.S.C. § 636(b). (ECF No. 9).

Presently before the Court is the Center's motion to dismiss. (ECF No. 18). The Center argues that Soulliere's complaint "is vague and does not comport with the pleading requirements of Fed. R. Civ. Pro. 8 or 10." (ECF No. 18, PageID.87). Specifically, the Center argues that Soulliere's "Statement of Claim is no more than a lengthy stream-of-consciousness which seems to say a lot, but fails to shed any light as to why [the Center]

could conceivably be liable to her," and that "[i]t is impossible to discern from the Complaint whether [Soulliere] seeks to allege ordinary negligence, an intentional tort, or some other transgression." (*Id.*, PageID.82). The Center argues that the complaint consistently refers to "individuals with apparently no connection to this case" and "offers a stream-of-consciousness narrative which fails to provide sufficient identifying information regarding what events took place, when it occurred, where it occurred, and its connection to [the Center]," and that it is "devoid of a legal theory of liability." (*Id.*).[1]

**Legal Standards**

Federal Rule of Civil Procedure 8(a)(2) requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The Sixth Circuit "recognize[s] the continuing viability of the 'short and plain' language" of Rule 8 so as to "give the defendant fair notice of what the ... claim is and the

---

[1] The Center alternatively argues that "[t]here is no personal jurisdiction over [it]" because it is "an Ohio non-profit" that does "not reside in Michigan," and "[a]lthough Michigan is mentioned a few times, it is not mentioned in connection with any act by or involving [the Center]." (ECF No. 18, PageID.86-87). Because the Court is recommending that Soulliere's complaint be dismissed with leave to amend, it need not directly address this argument at this time. However, should Soulliere file an amended complaint, she must provide specific facts that would establish this Court's personal jurisdiction over the Center. *Gerber v. Riordan*, 649 F.3d 514, 517 (6th Cir. 2011) ("Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state. . . . General jurisdiction is proper only where a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state. [] Specific jurisdiction, however, is proper only in a suit arising out of or related to the defendant's contacts with the forum."). Failure to prove that jurisdiction exists may lead to Soulliere's case being dismissed for lack of jurisdiction. *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988) ("Where personal jurisdiction is challenged in a Rule 12(b) motion, the plaintiff has the burden of establishing that jurisdiction exists.").

grounds upon which it rests." *Kensu v. Corzion, Inc.*, 5 F.4th 646, 650 (6th Cir. 2021). "What is a short and plain statement of a claim or a simple, clear, and direct allegation will, of course, depend on the totality of the circumstances: more complicated cases will generally require more pleading. What Rule 8 proscribes is *obfuscation* of the plaintiff's claims," as "district court[s] and defendants should not have to fish a gold coin from a bucket of mud to identify the allegations really at issue." *Id.* (emphasis in original and quotation omitted). In other words, "[t]he key is whether the complaint is so verbose, confused, and redundant that its true substance, if any, is well disguised." *Id.* (quotation omitted).

### Analysis

Here, Soulliere's complaint is in clear violation of Fed. R. Civ. P. 8. The Court agrees with the Center's characterization of Soulliere's complaint as a "stream of consciousness" of certain wholly unclear events that took place after her arrival at the "Norma Herr Women's Center in Cleveland, Ohio" in May 2022. The timeline and relevance of these events are difficult to follow, as Soulliere starts by asserting in conclusory fashion, without any context, that her "life was in imminent danger," she was "running for [her] life," and she was apparently trying to "get to the FBI office on [L]akeside." (ECF No. 1, PageID.6). The complaint then goes on to list Soulliere's interactions with several individuals, but provides essentially no explanation as to who these individuals are, how, if at all, they are related to the Center, and how her interactions with or the actions of these individuals are relevant to her claims against the Center: (1) Kerry McCafferty ("I went to the office and talked to some woman whom I am suspecting

3

is a special agent and let her know I needed to speak to Kerry McCafferty . . . Kerry lied about our relationship and how we knew each other"); (2) Lisa ("Lisa contacts me from the FBI's office to schedule an appointment . . . I showed Lisa some of my work and was trying to explain that I needed help dealing with the police back in Michigan . . . [and] [s]he told me I had to go back to Michigan"); (3) Julianna Solomon ("[t]he police came and asked staff if there was a Julianna Solomon staying at the shelter and they would reply no," and "Julianna had already broke into my email and did an application to Target"); (4) Eddie ("I stayed outside until I met Eddie who took me home with him and I paid him to stay the night"); (5) Jenny and Bobby ("I had an argument with Jenny who was supposed to take me to Cincinnati with her and her husband Bobby"); (6) Monica ("I had a credit for ubereats for $35 and I had only told Monica about it"); (7) Rose Later ("I was in the hospital and Norma Herr got three deliveries from Walmart.com from my email but Rose Later's account"). (*Id.*, PageID.6-7).

Rather, the only individuals who appear to be connected to the Center are "staff member[s]" Gary and David, but it is unclear whether she is alleging claims against one or both of them, and if so, on what basis she is claiming liability against the Center. For instance, Soulliere alleges that "Gary, a staff member, drove 126 miles from Cleveland to Detroit and back to go have sex with Julianna," and that Soulliere "found out that David, a staff member would make a great catch because Julianna was with Gary and David has no car and lives with his mother." (*Id.*, PageID.6). She alleges that she "told Gary I had a crush on [David] but that I was 14 years older than him," Gary "laughed and told me to tell David," she told David and David "said what do you want me to do and I said I don't know

4

[Gary] told me to tell you," certain "supervisor[s]" asked Soulliere if she told David that she "had a crush on him" and Soulliere responded "yes, and again I thought it was over." (*Id.*, PageID.7). The complaint goes on to allege that David made a "comment about what [Soulliere] was wearing" and said she "can't go around looking trashy," that she was "tired of [David] grabbing [her] duffel bag and searching through [her] new underwear breaking [her] laptop," that she was "told [David] tattooed [her] name on his chest" without permission, that this somehow led to her being "suspended for 5 days for cussing out the director," and that "David Ward stalked [her] from Michigan to Cleveland for the weekend on Superior and 12th street." (*Id.*). Such allegations are rambling, incoherent, and simply fail to give fair notice to the Center or this Court as to what claims Soulliere is attempting to assert, and the alleged facts upon which they are premised.

Finally, the complaint is dispersed with muddled fragments of allegations that things were either stolen or broken, though she again fails to provide any context such that the Center or this Court can reasonably understand their relevance, if any. For example, Soulliere alleges:

> I had a CVS gift card that was supposed to be emailed stolen. I had a cup stolen, I had Evian water stolen that came in from Walmart.com. My Walmart account got screwed up and someone changed the name to Rose Later and I can[']t use the account anymore. I was accused of donating things to the shelter because I must like someone. The only one who should have known about the donations is William who would take the deliveries, sign my name or his and put them in the conference room. William happens to be married for 48 years now and he proudly says it to anyone who asks. My laptop was broken that I just purchased from Target in Cleveland. My ear buds were stolen.

(*Id.*, PageID.6).

5

Based on the above, Soulliere appears to allege that she was subjected to some form of "[h]arrssment that led to being thrown out" and being "sexually assaulted." (ECF No. 1, PageID.4). However, because the complaint is full of unspecific and/or irrelevant matter, and is in many instances simply incomprehensible, it is impossible to discern what factual allegations are being pleaded to establish liability against the Center, which is the only named defendant in this case. Such a pleading clearly runs afoul of the basic requirement to allege "a short and plain statement of the claim showing that the pleader is entitled to relief," as Soulliere's allegations are in no way "simple, concise, and direct."[2] Fed. R. Civ. P. 8(a)(2), (d)(1); *see Kensu,* 5 F.4th at 650. Indeed, while "[o]rdinarily, excessive detail is mere 'surplusage that can and should be ignored,' [] in some cases, excessive averments regarding extraneous facts 'make a complaint unintelligible, by scattering and concealing a morass of irrelevancies the few allegations that matter.'" *Jiggetts v. District of Columbia*, 319 F.R.D. 408, 415 (D.D.C. 2017) (quoting *United States*

---

[2] *See, e.g.*, ECF No. 1, PageID.7 ("At that point I figured [David] just needed an ego boost by telling everyone that I had a crush on him so when the director of the shelter approached me I told her I don't want anything more to do with him. I'm tired of him grabbing my duffel bag and searching through my new underwear breaking my laptop. I was told he tattooed my name on his chest so I against called the police to press charges. I never asked him to put my name on his chest and I never gave him permission. So, I was suspended for 5 days for cussing out the director. I stayed outside until I met Eddie who took me home with him and I paid him to stay the night. The next day I did laundry and was going to stay with this guy but I didn't know where I was. I went back by the shelter but across the street. I had an argument with Jenny who was supposed to take me to Cincinnati with her and her husband Bobby. I picked up a 12 pack of Pepsi and almost hit her with it. She used my phone from the time I met her until it went off around June 1. Someone tried to activate Walmart.com and I had to dispute the charges and my card was cancelled. I had a credit for ubereats for $35 and I had only told Monica about it. Couple of hours later uber gives Monica an order and said that I ordered it for Gary. I told her I didn't. I had no idea. I wasn't there when they delivered it and I don't know why she thought she could keep it and give it to her husband. She should have either given it to me as it had my name on it or given it back to the driver if the driver said it was for anyone who's name isn't on the receipt.").

*ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)). This is clearly such a case.

In sum, Soulliere's complaint violates Rule 8 because it is "so verbose, confused, and redundant that its true substance, if any, is well disguised" such that it lacks the necessary clarity to provide fair notice of her claims and the grounds upon which they rest. *Kensu*, 5 F.4th at 650-51 (emphasis in original and quotation omitted).

As to the proper remedies for violating Rule 8 as Soulliere has done, the Sixth Circuit's recently published decision in *Kensu* is instructive:

> . . . [I]f a complaint violates Rule 8, the appropriate remedy is rarely immediate dismissal. Our sister circuits agree. As Judge Easterbrook has written for the Seventh Circuit, "[f]at in a complaint can be ignored, confusion or ambiguity dealt with by means other than dismissal." *Bennett*, 153 F.3d at 518. The Ninth Circuit has suggested that the district court could "relieve a defendant of the burden of responding to a complaint with excessive factual detail" by "simply strik[ing] the surplusage" using Rule 12(f) or excusing the defendant from answering certain allegations. *Hearns*, 530 F.3d at 1132. Or, in line with our cases, the district court could dismiss without prejudice and with leave to amend, as happened here. *Frank B. Killian Co.*, 269 F.2d at 494; *Plymale*, 1991 WL 54882, at *1.
>
> But a district court need not have infinite patience. Persistent or vexatious refusal to follow the rules may warrant dismissal with prejudice. *Kuehl*, 8 F.3d at 908. So if a district court has offered multiple opportunities to fix the complaint and the plaintiff has persisted in noncompliance, then the harsh sanction of dismissal is appropriate. *Plymale*, 1991 WL 54882, at *1; *see also Garst*, 328 F.3d at 378; *Westinghouse*, 90 F.3d at 703. Likewise if the plaintiff's amended complaint indicates a basic inability or unwillingness to comply with the district court's orders. *See Mangan*, 848 F.2d at 910 (affirming dismissal after plaintiff reduced the total number of pages in the complaint primarily by making cosmetic changes such as to font size, spacing, and margins). All the more if the district court warns the plaintiff that a failure to comply will result in dismissal. *See Westinghouse*, 90 F.3d at 704.

> The district court's treatment of Mr. Kensu's complaint checked all these boxes.  As in *Plymale*, the district court gave him two chances to amend his complaint.  The court identified the specific problems to correct in the complaint and gave specific examples, as the district court had in *Garst*.  Mr. Kensu has demonstrated an inability or unwillingness to comply with the district court's orders.  His second amended complaint still retained pages of irrelevant and unspecific allegations.  By focusing as he does now on the number of times that he mentioned each defendant's name in the complaint or his inclusion of a table of contents, he demonstrates only that he utterly misses the district court's point—that he has not made clear which claims and allegations this lawsuit was about.  And the district court gave him fair warning that his second amended complaint would be his last chance.  Although harsh, the sanction of dismissal with prejudice was within the district court's discretion.

*Kensu*, 5 F.4th at 652-53.

Based on the above, the Court finds that the most appropriate course of action here is to (1) deny without prejudice Defendant's motion to dismiss; (2) dismiss Soulliere's complaint; (3) give her 21 days to file an amended complaint that conforms with Federal Rule of Civil Procedure 8; and (4) stay Defendant's obligation to answer or otherwise respond to any such amended complaint until further order of the Court, which will give the Court an opportunity to assess Soulliere's compliance with the mandates specified herein before Defendant is forced to act.  Such ruling is consistent with Sixth Circuit precedent, which reflects that a plaintiff should be given the opportunity to fix the issues in their pleading before an outright dismissal with prejudice.  *See id.* at 653 ("[I]n line with our cases, the district court could dismiss without prejudice and with leave to amend, as happened here."); *United States v. Frank B. Killian Co.*, 269 F.2d 491, 494 (6th Cir. 1959) (reversing district court's dismissal for failure to state a claim for relief under Fed. R. Civ.

P. 12(b)(6) of an "ambiguous and poorly drawn" complaint and directing the court to dismiss the "poorly drafted pleading . . . with leave to amend to conform to Rule 8") (quotations omitted).

Thus, the Court should allow Soulliere an opportunity to file a pleading that conforms to Rule 8's requirements, specifies each claim raised against the Center, is limited to the salient facts supporting each asserted claim, and omits the type of extraneous matters highlighted above, *see supra* at 3-6, that were scattered throughout Soulliere's present complaint, untied to any specific facts or cause of action. Soulliere must also clearly specify why individuals identified in the complaint are relevant to her claims, what conduct such individuals are accused of, and how such conduct by these individuals raises liability against the Center.

## Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that:

- Soulliere's complaint be **DISMISSED WITHOUT PREJUDICE**, that Soulliere be given **21 days** to file an amended complaint that conforms to Fed. R. Civ. P. 8's pleading requirements, and that Defendant's obligation to answer or otherwise respond to any such amended complaint be stayed pending further order of the Court.

- Soulliere be expressly warned that her failure to timely and adequately file a complaint conforming to Rule 8 and the Court's orders may result in the dismissal of her case with prejudice.

- Defendant's motion to dismiss **(ECF No. 18)** be **DENIED WITHOUT PREJUDICE**.

Dated: December 26, 2023         s/ David R. Grand
                                                    DAVID R. GRAND
                                                    UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 26, 2023.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager
